juvenile code requires the State to make reasonable efforts to preserve and reunify families prior to placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home. Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2012). Reasonable efforts also come into play when termination of parental rights is sought under Neb. Rev. Stat. § 43-292(6) (Cum. Supp. 2012). There is no evidence in the record, and the parents do not argue, that Laticia was removed from her home, and no motion for termination of parental rights has been filed. Thus, any discussion of reasonable efforts under the juvenile code is not warranted at this time.

## CONCLUSION

For the reasons stated above, we find that the juvenile court properly adjudicated Laticia as a child under § 43-247(3)(a) because her parents neglected her education.

AFFIRMED.

---

State of Nebraska, appellee, v. Yai D. Bol,
also known as Daniel Matit, appellant.
___ N.W.2d ___

Filed April 15, 2014.    No. A-13-319.

1. **Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.
4. **Criminal Law: Police Officers and Sheriffs.** A person is guilty of criminal impersonation if that person knowingly provides false personal identifying

information or a false personal identification document to a court or a law enforcement officer.

5. **Words and Phrases.** Personal identifying information includes names, dates of birth, and addresses.

6. ____. "Knowingly" means "willfully" as distinguished from "accidentally or involuntarily." In other words, to commit an act knowingly, a defendant must be aware of what he is doing.

7. ____. A personal identification document is defined to include a state identification card.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Elizabeth Elliott for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Inbody, Chief Judge, and Pirtle and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Yai D. Bol, also known as Daniel Matit, appeals from his conviction in the Lancaster County District Court for criminal impersonation. He alleges that there was insufficient evidence to support the conviction and that his sentence is excessive. Finding no merit to Bol's arguments, we affirm the conviction and sentence.

## BACKGROUND

Bol was questioned by Lincoln police officers on three separate occasions. During the third contact, Bol provided personal identifying information that conflicted with the information he gave the first two times. On February 12, 2012, Lincoln police officer Russell Schoenbeck responded to a report of an automobile accident and found a silver Chevrolet Tahoe "stuck on a snowbank and a fencepost." After running the license plate information, Officer Schoenbeck identified the registered owner of the vehicle as "Yai Bol." Officer Schoenbeck then searched the interior of the vehicle and found a citation to "Daniel Matit" in the center console.

Two individuals approached Officer Schoenbeck at the scene, and when asked if they knew "Yai Bol" or "Daniel Matit," they replied no and left the scene. Officer Schoenbeck later made contact with one of those individuals again, and at that time, the man produced a State of Nebraska identification card bearing the name "Daniel Matit" and a birthdate of January 1, 1989. Officer Schoenbeck ran the name "Daniel Matit" through the system the police use to obtain information and came up with a purportedly true person named "Daniel Matit" that was a person different than "Yai Bol." At trial, Officer Schoenbeck identified the defendant, Bol, as the man who provided him with the identification card. The officer also testified that the photograph of a man marked as exhibit 1 at trial was the man with whom he had contact on February 12, 2012.

On March 5, 2012, Lincoln police sergeant Benjamin Miller made contact with the driver of the same Tahoe that was involved in the February 12 incident. The driver told Sergeant Miller that his name was "Daniel Matit" and provided a State of Nebraska identification card bearing that name. Sergeant Miller completed a police report with the information provided by the driver, including the name "Daniel Matit"; a birthdate of January 1, 1989; and an address of 107 West 7th Street in Grand Island, Nebraska.

At trial, Sergeant Miller identified the defendant, Bol, as the driver of the Tahoe with whom he had contact on March 5, 2012. Sergeant Miller also testified that the man depicted in the photograph marked as exhibit 3 was the driver of the Tahoe and identified the defendant, Bol, as the man in the photograph.

The third occasion upon which the criminal impersonation charge is based occurred on May 7, 2012. Sergeant Miller stopped the same Tahoe and made contact with the driver, who told Sergeant Miller on that occasion that his name was "Yai Bol"; that his birthdate was January 1, 1986; and that he resided at 108 West 8th Street in Grand Island. At trial, Sergeant Miller identified the defendant, Bol, as the driver of the Tahoe with whom he made contact on May 7. Sergeant Miller testified that the man depicted in the photograph

marked as exhibit 5 was the driver of the Tahoe on May 7 and was the defendant, Bol.

Sergeant Miller testified that he later attempted to confirm the driver's identity, because he knew that the driver was the same man he had encountered on March 5, 2012, but that the driver had given him a different name on that date. Sergeant Miller ran the names "Yai Bol" and "Daniel Matit" through the police information system, and each search result came up with an actual person. Sergeant Miller testified that through his investigation, he determined that the individual's "real name" was "Yai Bol." The manner in which Sergeant Miller confirmed Bol's identity was not explained at trial, nor was Sergeant Miller able to confirm whether there was another person named "Daniel Matit" in Grand Island with a birthdate of January 1, 1989.

The State rested after the testimony of the officers, and Bol presented no evidence. The jury found Bol guilty of criminal impersonation, a Class IV felony. Bol was sentenced to 1 to 1 year's imprisonment, with credit for 180 days served. Bol timely appealed to this court.

## ASSIGNMENTS OF ERROR

Bol assigns that the evidence adduced at trial was insufficient to sustain a conviction for criminal impersonation and that the sentence imposed by the district court was excessive.

## STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001).

[2,3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly

depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012).

## ANALYSIS

Before addressing Bol's assignments of error, we digress to provide background on the criminalization of providing false information to law enforcement. In 1977, the Nebraska Legislature enacted a law that criminalized false reporting. See Neb. Rev. Stat. § 28-907 (Reissue 2008). This statute identified false reporting as "[f]urnish[ing] material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter." § 28-907(1)(a). Under this statute, false reporting is a Class I misdemeanor. See § 28-907(2)(a).

In 2009, the Nebraska Legislature enacted 2009 Neb. Laws, L.B. 155. According to the Introducer's Statement of Intent, the purpose of the bill was to protect the public from organized crime, widespread theft schemes, and identity theft. See Judiciary Committee, 101st Leg., 1st Sess. (Jan. 9, 2009). The bill amended the crime of criminal impersonation and defined it as "[k]nowingly provid[ing] false personal identifying information or a false personal identification document to a court or a law enforcement officer." Neb. Rev. Stat. § 28-638(1)(c) (Cum. Supp. 2012). Under § 28-638(2)(e), criminal impersonation is a Class IV felony. Because the bill became law effective on August 30, 2009, there is currently no published case law addressing the subsection of the criminal impersonation statute at issue here.

*Sufficiency of Evidence.*

Bol alleges that the evidence was insufficient to sustain his conviction. He claims that the State failed to prove beyond a reasonable doubt that he knowingly provided false personal identifying information or documents to a police officer, because the State failed to prove that the information provided by Bol was not truthful. Bol contends that merely providing "different" information to police officers does not

equate to providing "false" information. Brief for appellant at 11.

[4-6] A person is guilty of criminal impersonation if that person "[k]nowingly provides false personal identifying information or a false personal identification document to a court or a law enforcement officer." § 28-638(1)(c). Personal identifying information includes names, dates of birth, and addresses. Neb. Rev. Stat. § 28-636(2) (Cum. Supp. 2012). The word "knowingly" is not defined under this statute, but the Nebraska Supreme Court has noted that its meaning in a criminal statute varies in the context and commonly imports a perception of facts requisite to make up crime. See *R. D. Lowrance, Inc. v. Peterson*, 185 Neb. 679, 178 N.W.2d 277 (1970). In *State v. Lotter*, 255 Neb. 456, 523, 586 N.W.2d 591, 636 (1998), the Nebraska Supreme Court synonymized "'"knowingly"'" with "'"willfully"'" and distinguished it from "'accidentally or involuntarily.'" The court stated that "to commit an act knowingly, the defendant must be aware of what he is doing." *Id*.

According to the evidence presented at trial, on separate occasions, Bol provided police officers with two names ("Daniel Matit" and "Yai Bol"); two dates of birth (January 1, 1986, and January 1, 1989); and two addresses (107 West 7th Street and 108 West 8th Street). Bol argues that the State never proved his "real name," that the dates of birth were off by only one number, and that he could have moved in the 3-month time period between his contacts with police.

Although all of these arguments are plausible, there is sufficient evidence that a rational jury could have found that Bol provided information to police officers that he knew was false. During Bol's initial encounter with Officer Schoenbeck on February 12, 2012, he denied that he knew either "Daniel Matit" or "Yai Bol," when in fact, he had used both names in the past. In addition, while it is possible for a person to have two names or two addresses, he cannot have two dates of birth. Thus, the jury could have found that by providing two different dates of birth, Bol knowingly provided false information.

[7] Bol further claims that the State failed to adduce any evidence of any other person by the name "Yai Bol" or "Daniel Matit" and that therefore, the State's evidence was insufficient. We note that in order to be guilty of criminal impersonation, a person must knowingly provide either false personal identifying information or a false personal identification document to a law enforcement officer. A "[p]ersonal identification document" is defined to include a "state identification card." § 28-636(1). Given the testimony of Officer Shoenbeck that the defendant's "real name" was "Yai Bol," and given Bol's presentation of the state identification card bearing the name "Daniel Matit" and the birthdate of "January 1, 1989," there was sufficient evidence for a jury to convict Bol of criminal impersonation under this prong of the statute.

*Excessive Sentence.*

Bol claims the sentence imposed by the district court is excessive. Criminal impersonation under § 28-638(1)(c) is a Class IV felony, punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both. See, Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2012); § 28-638(2)(e). Bol was sentenced to 1 to 1 year's imprisonment, with credit for 180 days served, and thus, the sentence imposed is within the statutory limits.

At the time Bol was sentenced on the criminal impersonation conviction, he was also sentenced for two other cases, which included convictions for fourth-offense driving under the influence (DUI) with refusal of a chemical test, driving during revocation, and third-offense aggravated DUI. Bol has a lengthy criminal history, including convictions for numerous DUI offenses and driving during suspension or revocation, burglary, providing false information to a police officer, making a false statement to a police officer, cocaine possession, issuing a bad check, criminal mischief, theft by unlawful taking, and domestic assault.

Bol was placed on probation for DUI in Vermont in 2005 but violated his probation. In 2009, he was placed on probation again in Vermont for possession of cocaine. Whether he

successfully completed this probation term is unknown. He was placed on 6 months' probation in Nebraska in June 2011 for DUI and refusal to submit to a chemical test. The presentence investigation report indicates that it is not known whether Bol successfully completed this probation term, but he was convicted of driving without a license in August 2011, criminal mischief and theft by unlawful taking in November 2011, and third-offense DUI in December 2011.

At sentencing in this case, the district court took into consideration the nature and circumstances of the crimes and the history, character, and condition of Bol. Based on those factors, the court found that imprisonment was necessary for protection of the public, because of the substantial risk that based upon his history, Bol would engage in additional criminal conduct during any period of probation, and because a lesser sentence would depreciate the seriousness of the crimes and promote disrespect for the law. Based on the foregoing, we cannot find that the sentence was an abuse of discretion.

We note that Bol's actions could have subjected him to prosecution for false reporting under § 28-907, which, as a Class I misdemeanor, would have carried the potential for a lesser sentence. However, the enactment of §§ 28-636 and 28-638 allows the State to charge Bol with the crime of criminal impersonation, and under the facts of this case, we find no error in the State doing so.

## CONCLUSION

We conclude the evidence was sufficient to support a conviction for criminal impersonation, because a rational jury could have found that Bol knowingly provided false information to police officers. In addition, we find that the sentence imposed was not excessive. We therefore affirm.

Affirmed.